UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MARK ANTHONY CHRISTIANS,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL JOE HANVEY, Physician Assistant at SDSP-Jameson, in his individual and official capacity; KELLIE WASKO, Secretary of Corrections at South Dakota State, in her individual and official capacity; ALYSSA WELBIG, Nurse Practitioner at SDSP-Jameson, in her individual and official capacity; DAN SULLIVAN,[1] Former Warden at SDSP-Jameson, in his individual and official capacity; ARAMARK CORRECTIONAL SERVICES, LLC, Contract Food Service Provider at SDSP-Jameson, in its individual and official capacity; SGT. STEVEN SWYGERT, Sgt. for SDSP/Jameson, in his individual and official capacity; RYAN HOWYE, Unit Coordinator at Jameson, in his individual and official capacity; TIMOTHY SCHNEIDER, Unit Manager at Jameson, in his individual and official capacity; MELISSA MATURAN, Administrative Remedy Coordinator at Jameson, in her individual and official capacity; TERESA BITTINGER, Warden at SDSP/Jameson, in her individual and official capacity; ANTHONY GRAHAM, Aramark Supervisor at Jameson, in his individual and official capacity; MARK, Aramark Supervisor at Jameson, in his | 4:23-CV-04137-LLP<br><br><br>MEMORANDUM OPINION AND ORDER RULING ON PLAINTIFF'S VARIOUS MOTIONS AND 1915A SCREENING OF AMENDED COMPLAINT |

---

[1] Christians sues Dan Sullivan, former warden of the SDSP-Jameson, in his individual and official capacities. Doc. 15 at 3. Under Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." The current warden is Teresa Bittinger, who is automatically substituted for Sullivan on the official capacity claims.

individual and official capacity; IAN,[2] Aramark
Supervisor at Jameson, in his individual and
official capacity; UNKNOWN DIETICIAN,[3]
Aramark Dietician for Jameson, in his or her
individual and official capacity; C. IRIZARRY,
Aramark Dietician, in his or her individual and
official capacity; RAINY, Aramark Supervisor
at Jameson, in his or her individual and official
capacity; TODD IRVIN, Correctional Officer, in
his individual and official capacity; CODY
PAULSON, Correctional Officer, in his
individual and official capacity; SUMMIT
FOOD SERVICE, Food Service Provider at
Jameson, in its individual and official capacity;
JOHN TRIERWEILER, Summit District
Manager, in his individual and official capacity;
JESSICA WALDNER, Summit Dietician, in her
individual and official capacity; TROY PONTO,
Associate Warden, in his individual and official
capacity; GASSON, Aramark Supervisor, in his
or her individual and official capacity; GRAY,
Aramark Supervisor, in his or her individual and
official capacity; YIEN, Aramark Supervisor at
Jameson, in his or her individual and official
capacity; KAYLA TONLIN, Aramark Dietician
for Jameson, in her individual and official
capacity; JULIE COX, Nurse Practitioner for
SDDOC, in her individual and official capacity;
KAYLA THELEN, Mental Health Supervisor,
in her individual and official capacity; CIERRA
REVOLORIO, Health Services Supervisor, in
her individual and official capacity; AARON
HAYNES, Chief Medical Officer for DOH, in
his individual and official capacity; SETH
HUGHES, Captain at Jameson Annex, in his
individual and official capacity; JEANNIE
BERTSCH, Major at Jameson Annex, in her

---

[2] In prior versions of Christians' complaint, he named Ian as a defendant, but Ian is not named as
a defendant in Christians' amended complaint. *See* Doc. 15 at 1–9. Thus, Christians' claims
against Ian are dismissed without prejudice for failure to state a claim upon which relief may be
granted under 28 U.S.C. § 1915A(b)(1).
[3] In prior versions of Christians' complaint, Unknown Dietician was named as a defendant, but
Unknown Defendant is not named as a defendant in Christians' amended complaint. *See* Doc. 15
at 1–9. Thus, Christians' claims against Unknown Dietician are dismissed without prejudice for
failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

individual and official capacity; MARK
RICHTER, Doctor at Jameson Annex, in his
individual and official capacity; SHELBY
BLACK, Nurse Practitioner at SDDOC, in her
individual and official capacity; (WESLEY)
LIETENANT GRASSIE, Jameson Annex, in his
individual and official capacity; JACK
WALTER, Unit Coordinator at Jameson, in his
individual and official capacity; RYAN
VANDERAA, Unit Manager at Jameson, in his
individual and official capacity; PENNY
LINDSAY, C.O. at Jameson, in her individual
and official capacity; JOHN AND/OR JANE
DOE(S), Executives for Summit Foods, in their
individual and official capacities; TABITHA
BENTING, Associate Warden at Jameson, in her
individual and official capacity; RYAN
LANDON, Health Services Supervisor, in his
individual and official capacity; JENNIFER
JACKSON, Dietician for SDDOC, in her
individual and official capacity; CASSANDRA
KRETCM, Mental Health Professional, in her
individual and official capacity; LIZ MILLER,
Mental Health Professional, in her individual
and official capacity; TAYLOR YOST, Unit
Coordinator, in his or her individual and official
capacity; AMBER PIRRAGLIA, Director of
Prisons, in her individual and official capacity;
DARIN YOUNG,[4] Former Chief Warden, in his
individual and official capacity; JENNIFER
DREISKE,[5] Former Associate Warden, in her
individual and official capacity; JESSICA
COOK,[6] Former Associate Warden, in her
individual and official capacity; BRENT
FLUKE,[7] Former MDSP Warden, in his
individual and official capacity; MIKE

---

[4] Young is no longer employed by the DOC. However, his successor is not substituted because
all official capacity claims against him are dismissed during screening.

[5] Dreiske is no longer employed by the DOC. However, her successor is not substituted because
all official capacity claims against her are dismissed during screening.

[6] Cook is no longer employed by the DOC. However, her successor is not substituted because all
official capacity claims against her are dismissed during screening.

[7] Fluke is no longer the current warden. However, his successor is not substituted because all
official capacity claims against him are dismissed during screening.

| | |
|---|---|
| LEIDHOLT,[8] Former Secretary of Corrections, in his individual and official capacity; REBECCA SCHIEFFER, Associate Warden MDSP, in her individual and official capacity; and SUSAN HUDSON, Lead Supervisor for Aramark, | |
| Defendants. | |

Plaintiff, Mark Anthony Christians, an inmate at the South Dakota State Penitentiary (SDSP) Jameson Annex, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. Christians timely paid the full civil complaint filing fee. This Court granted Christians' third motion to amend his complaint, Doc. 12, and his motion to add defendants, Doc. 13. *See* Doc. 14. He also filed several various motions. *See* Docs. 4, 6, 7, 8, 16, 17, 18, 19, 20, 21, 22, 23. This Court now screens Christians' amended complaint.

## 1915A SCREENING OF AMENDED COMPLAINT

### I.   Factual Background

#### A.   Medical Needs

##### 1.   Inadequate Nutrition (Counts I, II, and VIII)

On January 14, 2021, a complaint was served on Summit Food Service Defendants (Summit Defendants)[9] after Christians allegedly lost ninety pounds and suffered other ailments because he received insufficient calories. Doc. 15 at 23. After receiving the complaint, Christians

---

[8] Under Federal Rule of Civil Procedure 25(d), Kellie Wasko, the current Secretary of the Department of Corrections, is automatically substituted on Christians' official capacity claims against Leidholt.

[9] Christians references Summit Defendants. Doc. 15 at 23. For the purposes of screening, this Court assumes that "Summit Defendants" includes all employees of Summit named as defendants in the amended complaint: John Trierweiler, Jessica Waldner, and John and/or Jane Doe(s). Doc. 15 at 3–9.

alleges that Summit[10] did nothing to adjust his diet. *Id* Diet modifications were not made for two years after notification of Christians' risk to injury. *Id.* He claims that he was supposed to receive more than 3,000 calories, but he instead received less than 2,000 calories. *Id* Between March 20, 2021, and April 3, 2021, Christians lost an additional sixteen pounds. *Id* During the sixteen-pound-weight-loss, Christians was housed in the Special Housing Unit (SHU), could not access commissary, and relied solely on food provided by Summit. *Id* Just prior to entering the SHU, Christians weighed 238 pounds. *Id.* On March 20, 2021, Christians weighed 233 pounds. *Id* On April 3, 2021, he weighed 217 pounds. *Id* Because of the loss of sixteen pounds, Christians lost strength; experienced muscle atrophy; and felt fatigue, hunger pains, dizziness, lightheadedness, vomiting, stomach sickness, and diarrhea. *Id*

Christians alleges that Summit and the South Dakota Department of Corrections (DOC) provided inedible and insufficient quantities of food to increase commissary sales. *Id* at 24. Christians also claims that Summit served "rotten, spoiled and/or completely disgusting food that was inedible. It caused sickness and vomiting." *Id* (capitalization in original omitted). Christians "would literally gag on the food and vomit in [his] mouth while trying to force it down." *Id.* (capitalization in original omitted). Many inmates, including Christians, complained about the food to Summit employees and supervisors, DOC staff, and top administrators. *Id.* However, the food was not corrected. *Id.* The DOC did not renew Summit's food service contract. *Id* Christians claims that Former Chief Warden Darin Young, Former Associate Warden Jennifer

---

[10] Summit and Aramark Correctional Services, LLC are private companies that contracted with the State of South Dakota to provide food services in the South Dakota Department of Corrections facilities. Private companies act under color of state law when providing services in the prison and can be sued under § 1983. *West v Atkins*, 487 U.S. 42, 56 n 15 (1988). Thus, for the purposes of screening, this Court assumes that Summit and Aramark were acting under color of state law.

Dreiske, Associate Warden Troy Ponto, Former Associate Warden Jessica Cook, Former Warden

Brent Fluke, Former Secretary of Corrections Mike Leidholt, Associate Warden Rebecca

Schieffer, and Summit Defendants "conspired to deprive inmates food and adequate nutrition in

an effort to reduce budget costs, increase revenue/profit from both the cost of saving money on

food and driving up commissary sales of which both profited." *Id* at 24–25 (capitalization in

original omitted). He also claims that the defendants conspired to provide inadequate nutrition to

inmates housed in the SHU and A-Floor to further punish inmates, which caused health

consequences including weight loss, muscle atrophy, hunger pains, and fatigue. *Id* at 25. He

claims that the defendants were aware of these allegations but always replied that the food was

adequate. *Id* He claims that the defendants violated his rights under the Eighth Amendment and

42 U.S.C. § 1985. *Id.* at 23. He also alleges state-law claims of negligence and negligent

infliction of emotional distress. *Id*

Aramark Food Service replaced Summit as the contractor providing food and

commissary services at the Jameson Annex. *Id* at 24. Christians claims that Aramark and the

DOC also provided inadequate nutrition to him and other inmates. *Id.* at 12. Between January

2023 and April 2023, Christians lost fifty pounds of mostly muscle because of inadequate

nutrition. *Id* He lost twenty pounds in one month alone. *Id* Christians claims that he received

only 1,500 calories when he should have received nearly 3,000 calories. *Id* Christians sent

multiple letters and hand-delivered kites to Aramark about his weight loss and the medical issues

related to his weight loss. *Id* Christians sent Aramark grievances, his dietary guidelines, and

other nutritional information, but he did not receive a reply or a diet adjustment. *Id* DOC

Defendants were notified of Christians' grievances. *Id*

On September 21, 2023, Christians had a medical appointment with Dr. Mark Richter. *Id* at 13. Christians' cholesterol was above normal levels, and Dr. Richter said that the high cholesterol was due to his diet. *Id.* Christians' cholesterol medication was changed and doubled in dose, and Dr. Richter prescribed Christians a cardiac diet with lower fat and cholesterol and higher lean meat, fruits, and vegetables. *Id* Christians informed Unit Manager Timothy Schneider, Warden Teresa Bittinger, Secretary of Corrections Kellie Wasko, Administrative Remedy Coordinator Melissa Maturan, and Aramark of Dr. Richter's instructions, but they did not act on the instructions. *Id* Christians did not receive the prescribed diet and instead continued to receive the main line diet, which had high fat meat, deep fried foods, cheeses, and sweets. *Id* Christians claims that because his diet has not been changed, Dr. Richter is worried about plaque buildup and cardiovascular disease. *Id*

On March 16, 2024, another diet order was issued for Christians to have more fruit, vegetables, whole grains, and lean meats, but Christians has only seen an increase in fruit served without Aramark following the rest of the order. *Id* at 14. The diet order has expired. *Id.* Dr. Richter told Christians that he meant to issue the order for a year out but must have entered the order to expire in 2024 instead of 2025. *Id* Dr. Richter told Christians that he would reenter the order, but he has not done so. *Id* In June 2024, Nurse Practitioner Shelby Black said that she would reenter Dr. Richter's orders, but she has not done so and instead ordered a cardiac diet. *Id* However, Aramark did not provide a cardiac diet. *Id* At a follow-up appointment a week later, Christians informed Black and Health Services Supervisor Cierra Revolorio that he was not receiving a proper diet and that his diet would not be honored. *Id* "Black and Revolorio refused to honor Dr. Richter[']s previous order of a specific provider diet and said the cardiac diet was ok, <u>knowing</u> that it was not provided." *Id* (capitalization in original omitted). Christians pointed

out his muscle loss and described how the diet he received did not meet Dr. Richter's orders, but Black and Revolorio said that nothing more could be done. *Id* at 14–15. Since Black's order, Christians has lost an additional twelve pounds of primarily muscle. *Id* at 15. From June 3–10, 2024, Christians received the 2,000 calorie diet that Black entered, and he lost seven pounds. *Id.* From June 13–18, 2024, Christians was housed in the SHU and lost five more pounds. *Id* Despite a doctor's order, Dietician Jennifer Jackson refused to give Christians additional fruits, vegetables, whole grains, and lean protein to treat his dyslipidemia and hyperlipidemia; she also knew of the inadequate nutrition but tried to convince others that the food is adequate. *Id.* at 15–16. Director of Prisons Amber Pirraglia refused to correct Christians' diet and conspired with Jackson, Wasko, Bittinger, Aramark, and Aramark's employees to provide inadequate nutrition to reduce costs. *Id* Christians also claims that Health Services Supervisor Ryan Landon made direct decisions about Christians' diet. Doc. 13 at 1. He claims that defendants planned to inform inmates that they are being provided 2,700 calories despite them receiving around 1,500 calories. Doc. 15 at 15–16.

For four years, Christians was prescribed extra protein by a specialist. *Id* at 11. Christians claims that Sergeant Steven Swygert incorrectly told medical staff that Christians was giving away his extra protein snack. *Id.* Nurse Practitioner Alyssa Welbig cancelled Christian's extra protein without examining him or talking to the specialist, and Welbig "denied reinstating [his] protein snack even though she cancelled it under false pretenses." *Id* (capitalization in original omitted). Physician Assistant Joe Hanvey also denied Christians' request to reinstate his extra protein. *Id.* Former Warden Dan Sullivan, Schneider, and Maturan denied Christians' grievances and instead told Christians to purchase commissary. *Id* Christians claims that between October 2022 and the time he filed his amended complaint he has lost fifty pounds,

8

which was mostly muscle and strength loss. *Id* at 11–12. He also alleges that his muscles have atrophied, and he has suffered mental distress and anguish, hunger pains, and weakness. *Id*

### 2.      Obsessive-Compulsive Disorder (Counts III, IX, X, and XIV)

Christians was diagnosed with Obsessive Compulsive Disorder (OCD). *Id* at 17. To treat the symptoms caused by OCD, Christians was prescribed medication, which was reduced to ineffective levels. *Id.* Listening to music and chewing gum were helpful for his mental health care. *Id.* Despite listening to music being the most helpful for his treatment, "medical staff and the DOC are refusing to provide batteries for [him] to listen to music on [his] radio. This includes Dan Sullivan, Teresa Bittinger, and Tim Schneider, Kayla Thelen, Cassandra [Kretcm], Wasko." *Id* (capitalization in original omitted). Christians also claims that Mental Health Supervisor Kayla Thelen, Mental Health Professional Cassandra Kretcm, Schneider, Bittinger, and Wasko did not allow him to chew gum for his OCD treatment. *Id* He claims that these actions violate the Eighth Amendment and alleges state-law claims for medical malpractice, negligence, and negligent infliction of emotional distress. *Id*

OCD caused Christians to suffer from severe insomnia, resulting in only a couple hours of sleep at a time. *Id.* at 36. As part of Christians' treatment for his OCD, he received sleep medication for the past six years. *Id* The DOC no longer issues treatment for sleep issues. *Id* Christians claims that the lack of sleep exacerbated his OCD and causes him mental pain. *Id* Christians' requests for sleep accommodations—including a comfort mattress, pillows, and medication—have been denied. *Id* Christians filed a request with Maturan, who is the Americans with Disabilities Act (ADA) Coordinator, to see a psychiatrist, but his request was denied "specifically due to [his] mental illness (disability)." *Id.* at 36–37 (capitalization in original omitted). He filed grievances, but he did not receive a response. *Id* Christians also

.

requested accommodation for legal help due to mental fog and cognitive decline. *Id* at 37. Unit Coordinator Jack Walter took Christians' grievances. *Id* Wasko and Bittinger were made aware of Christians' requests, but Wasko said it was not an ADA issue. *Id.*

Christians previously received a bedtime dosage of Hydroxyzine. *Id.* at 26–27. Doctors have previously ordered Christians to receive his medication at an earlier time of day, but receiving the medication at an earlier time of day was ineffective. *Id.* at 27. Christians had also received a lower dosage of Hydroxyzine, but the dosage was increased because the lower dosage was ineffective. *Id* On October 11, 2023, Christians visited with Nurse Practitioner Julie Cox about his OCD. *Id* at 26–27. Cox lowered the dosage of Christians' Hydroxyzine prescription and changed the time that he received his prescription, despite Christians reporting that the dosage and timing was helpful. *Id* These changes reduced his treatment to an ineffective level. *Id* Christians also claims that Cox refused to address his OCD symptoms, despite Christians receiving medication for the symptoms for four years. *Id* at 26.

After Christians sent dozens of kites and grievances and had multiple conversations with health and behavioral staff and DOC staff explaining Christians' health concerns, he was seen by Cox on January 10, 2024. *Id* at 27. Christians claims that Cox refused to address his OCD symptoms, anxiety, and insomnia. *Id* Cox reinstated Christians' prescription of Hydroxyzine but to the lowest, ineffective level, despite Christians repeatedly telling her that the level was ineffective. *Id* Cox refused further treatment for Christians and told him that she would see him in about a month. *Id.*

On February 7, 2024, Cox saw Christians and addressed his OCD. *Id* Cox suggested Prozac and Fluoxetine, which Christians claims could take weeks to become effective. *Id* Christians told Cox that he thought he had tried both suggested medications for months. *Id* at

27–28. Cox also refused to prescribe Christians the next level dosage of Hydroxyzine. *Id.* Cox asked Christians if she had his medical records; Christians told Cox that he had been treated by prison mental health staff for over five years. *Id.* at 28. Cox said she would review Christians' medical chart and see him in a week with a new medication plan to address his OCD. *Id.* Christians claims that at the time he filed his compliant, he had not been seen by Cox or any mental health staff again. *Id.* At the time he filed his amended complaint, Christians claims that he was taking no medication because of Cox and that Cox refused to see him for two months. *Id.* at 26.

On March 28, 2024, Christians was told that he would be seen in six weeks to adjust his medication. *Id.* at 28. At the time Christians filed his amended complaint, it had been thirteen weeks, and he has not been seen. *Id.* Christians spoke with Mental Health Professional Liz Miller multiple times about being seen, but he has not received a response. *Id.* Christians also sent multiple kites about being seen, but Kretcm and her supervisor, Thelen, had not responded. *Id.*

Christians sues Thelen because she "failed to monitor, train or supervise" Cox and claims that Thelen "assume[d] responsibility for [Christians'] care and treatment after she was informed of the mistreatment/negligence/delay of Cox." *Id.* (capitalization in original omitted). Christians sues Lieutenant Wesley Grassie because he refused to assist or call mental health to assist Christians during a mental health emergency. *Id.* at 26. Christians sues Wasko, Bittinger, and Chief Medical Officer Dr. Aaron Haynes because they are "all responsible for the lack of adequate staff to provide timely mental health care or supervision of which they were informed." *Id.* at 28 (capitalization omitted).

Christian claims generally that he has not been provided mental health care for seven months. *Id.* at 29. Christians wrote multiple kites and grievances about his mental health care

informing Bittinger, Wasko, Thelen, and Revolorio about the lack of treatment, delays between appointments, inappropriate restrictions of medications, and inappropriate time restrictions for distribution of medications. *Id.* Christians claims that his mental health care has been negatively impacted by staff negligence, staffing shortages, lack of trained staff, and limited access to a therapist only once a month. *Id.* Christians claims that because of the lack of health care he has suffered mental anguish, insomnia, headaches, high cholesterol, somatic pain, confusion, lack of comprehension and concentration, distress, anxiety, and humiliation. *Id.* Christians claims that Dr. Haynes, Thelen, Revolorio, Bittinger, and Wasko are responsible for the setting the healthcare policies and for hiring staff. *Id.*

### 3.    Knee Injury (Count IV)

On December 3, 2020, Christians suffered a knee injury. *Id.* at 18. He was being returned to the prison in a transport van and was restricted in full chains, belly chains, handcuffs, boxed, and leg irons. *Id.* Christians claims that when he was exiting the van, he was dropped or tripped by Correctional Officers Todd Irvin and Cody Paulson. *Id.* Irvin was behind Christians and did not have the restraints secured. *Id.* Paulson was in front of Christians and made no effort to stop his fall. *Id.* Christians landed on his left knee. *Id.* Christians claims that proper procedure was for correctional officers to have restraints secured by gripping them to prevent falls; he claims that Irvin and Paulson's failure to follow proper procedure resulted in his knee injury. *Id.*

Christians visited Health Services about his knee and later had an MRI. *Id.* It was determined that his ACL was destroyed because "it is no longer there." *Id.* (capitalization in original omitted). He claims that his knee is "completely messed up[,]" and he is no longer able to run, jog, or do certain exercises with his leg. *Id.* (capitalization in original omitted). Because of his knee injury, he alleges a state-law negligence claim against Irvin and Paulson. *Id.*

### 4. Sexual Assault and Harassment (Count V)

Christians claims that he has been harassed by Swygert. *Id.* at 19. Swygert would stare at him when Christians was naked in the shower area, licked his lips, and winked at Christians; Swygert also would allegedly ask Christians, "How would you like a little Swygert in ya [sic]?" *Id* (capitalization in original omitted). Christians alleges that Swygert "was very vocal about his homosexuality, often talking about his boyfriend/husband and their sex acts." *Id.* at 20 (capitalization in original omitted). Swygert allegedly grabbed Christians on the crotch and butt several times. *Id.* at 19.

Christians claims that Swygert sexually assaulted him. *Id* On three different occasions between September or October 2021 through January or February 2022, Swygert took Christians to the restroom to perform urine tests. *Id* During these tests, Swygert made Christians "strip naked and [Swygert] put multiple fingers in [Christians'] anus moving them rapidly back and forth. [Swygert] said he was searching for contraband and that drugs were reported." *Id.* (capitalization in original omitted). Christians later found out that Swygert's actions were not standard procedure and were instead rape. *Id.* Christians alleges that "Swygert raped [him] three times under the guise of searching for contra band [sic]." *Id.* (capitalization in original omitted). When Christians refused later searches, Swygert threatened him with a write-up for refusing an order and threatened that he would be placed in the SHU. *Id.* at 20. Swygert allegedly committed sexual assault to multiple inmates, which was "reported to DOC officials but as far as [Christians] know[s] was never addressed with Swygert." *Id.* (capitalization in original omitted). Christians claims that Swygert was terminated or forced to resign because of improper conduct against an officer. *Id*

13

Because of Swygert's actions, Christians claims that he has bled from his rectum and now has a constant sore. *Id* at 19. He also believes that something tore in his rectum area that caused bleeding and pain. *Id* He has suffered from mental anguish, humiliation, bleeding, pain, and nightmares. *Id* Due to the allegations of sexual assault, Christians brings a claim for intentional infliction of emotional distress and claims for violation of his Fourth and Eighth Amendment rights against Swygert; Christians also sues Wasko for failure to train or terminate Swygert. *Id*

### 5.      Footwear (Count XII)

Throughout Christians' entire prison stay, the DOC was aware that he had wide feet. *Id* at 32. Outside providers recommended that Christians receive a wide shoe. *Id* at 33. Christians claims that he has been supplied a wide shoe for over a decade. *Id* For the last six years, the DOC provided Christians accommodating footwear with Velcro. *Id* at 32. Christians developed arthritis in his feet and was provided custom-made orthotics, which required that Christians wear a lace-up shoe. *Id.* The DOC provided Christians with lace-up shoes for six years until he was provided a new, narrow-fit shoe in January 2024. *Id* The new shoes caused blistering, lacerations, and bleeding, which resulted in permanent scarring. *Id* at 33. Christians requested new shoes and his custom orthotics approximately a dozen times, but he was given the run around. *Id* Christians was referred to a doctor, who recommended he receive a wider shoe, but the recommendation was denied. *Id* Christians was referred to a specialist who said that he needed a wide-fit, lace-up shoe and recommended Christians receive the same shoe he currently has; the recommendation was denied. *Id* at 32–33. Christians was offered "an inadequate (and wrong width) medical shoe (after repeatedly denying such shoe earlier)." *Id.* at 33 (capitalization in original omitted). Christians claims that with the amount the DOC has spent to prove that he

did not need a wide shoe, the DOC could have supplied him shoes for the next twenty to fifty years. *Id* Christians has filed multiple grievances about the DOC's efforts to deny him shoes. *Id.*

Christians sues Bittinger, Schneider, Landon, Major Jeannie Bertsch, and Unit Manager Ryan Vanderaa for violating his First and Eighth Amendment rights. *Id.* Christians spoke to Bittinger about his footwear concerns and sent her a kite, but she did not respond. *Id* Schneider and Vanderaa were unit managers responsible for ordering shoes. *Id* Landon denied Christians' request for new shoes and "attempted to thwart efforts." *Id* (capitalization in original omitted). Benting was "informed and made no affirmative answer that issue would be resolved." *Id* (capitalization in original omitted). On Christians' claims for denial of proper footwear, he seeks $10,000 in compensatory/punitive damages and declaratory and injunctive relief. *Id* at 38.

## B. Employment and Property Issues (Counts VI, VII, and XIII)

Christians claims that he was not paid for 36.5 hours of work in October 2022. *Id* at 22. He alleges that he is paid $0.25 per hour and was denied in total $9.13 by the DOC for work he completed. *Id* Schneider refused to approve Christians' grievance or pay. *Id* Christians' alleges a state-law small claims action for theft and seeks compensatory damages of $9.13 and declaratory relief. *Id* at 22, 39.

Christians claims that "on multiple dates Steven Swygert laid [him] in and locked [his] door when [Christians] was supposed to be working." *Id* at 21 (capitalization in original omitted). When Christians asked Swygert why, Swygert allegedly said, "If you're gonna [sic] file a grievance on me this is what you get–locked down." *Id* (capitalization in original omitted). Christians alleges that "every other inmate worker and orderly was allowed to go to work at their respective jobs[.]" *Id* (capitalization in original omitted). Christians claims that he suffered mental anguish and retaliation that violated his Fourteenth Amendment equal protection rights

and First Amendment retaliation rights. *Id* He also sues Swygert for intentional infliction of emotional distress under state law. *Id*

Christians claims that Correctional Officer Penny Lindsay treated him differently from other inmates and retaliated against him. *Id* at 34. Lindsay locked Christians down for extra time and released him late for work. *Id* Christians brought his concerns to Schneider, but Lindsay's behavior became worse. *Id* She continued with her prior behavior and additionally refused to open his cell door for him to use the restroom, kept him from hall access to travel to his job, and yelled and screamed at him. *Id* Lindsay permitted other inmates to be out of their cell during non-working hours, but she directed other officers to lock Christians up if he attempted to leave his cell to go to work. *Id* Every time Christians reported Lindsay her behavior worsened. *Id.* Other officers commented to Christians that Lindsay "must really hate you," "why doesn't she like you[,]" and "she has a problem with you doesn't she?" *Id* (capitalization in original omitted). Lindsay was also responsible for packing Christians' items when he was sent to the SHU, and upon his release he noticed that several items of his personal property were missing or exchanged for lesser quality items. *Id* at 35.

Upon receiving a M-6 conduct charge on June 13, 2024, Vanderaa immediately fired Christians from his job without back pay. *Id.* Christians claims that Vanderaa fired him without cause based on a mere rumor because Vanderaa told Christians that he did not even read the write-up. *Id.* Christians claims that he was treated differently than an inmate who committed a more serious offense but was not taken to the SHU, kept his job, and received back pay when not working or other inmates who were taken to the SHU for serious charges but kept their job and received back pay. *Id* Vanderaa told Christians that, even if he received his job back, he would not receive back pay. *Id* Christians claims that he was fired because he filed grievances and had

told Vanderaa the week prior that he would sue him in federal court if he did not order Christians the proper footwear. *Id* Vanderaa also seized Christians' property and denied him commissary privileges, which Christians claims is against policy. *Id*

Because of Lindsay and Vanderaa's actions, he suffered injuries of mental distress, lack of pay for work, and loss of property. *Id* at 34. Christians sues Lindsay and Vanderaa for violation of his rights under the First and Fourteenth Amendments and under state law for negligent and intentional infliction of emotional distress. *Id*

### C.   Access to the Courts (Count XI)

Christians claims that the Jameson Annex does not have a "trained legal assistant to help decifer [sic] law library or properly file pleadings. Law library is often (daily/weekly) inaccessible [sic] when needed." *Id* at 30 (capitalization in original omitted). He also alleges that inmates at the Jameson Annex are allowed usage of one portable non-functioning computer, which Christians has not been allowed to use for about four years. *Id.* at 31. The computer has allegedly been fixed, but the attached printer does not work. *Id* Other inmates at the Jameson Annex were permitted to use a working computer in the library for their legal work, but Christians was denied when he requested to do so. *Id.* He also claims that inmates at other DOC facilities are allowed computer usage for legal documents. *Id*

Christian also claims that the insufficient number of staff caused a delay of a week or longer in sending and receiving mail. *Id* at 30. Christians on one occurrence experienced over a month-long delay in receiving mail. *Id.* When there is sufficient staff, inmate mail requests are denied because the staff was "too busy" or "not their job[.]" *Id* (capitalization in original omitted). Christians claims that the delay in mailing causes inmates to file rushed or poorly prepared pleadings "as [Christians] (and others) must factor . . . weeks [in] advance to submit

documents resulting in very limited time to respond/reply/plead which is prejudicial." *Id.* (capitalization in original omitted).

On more than one occasion Christians' incoming and outgoing mail were opened outside of his presence. *Id.* On at least two occasions, he sent a letter to a federal judge in a sealed envelope, but he learned years later that the letters were opened and reviewed before being put in a different envelope by a DOC official, who Christians assumes was Captain Seth Hughes. *Id.* at 31. Christians has had mail not reach their destinations, which required him to resend the mail. *Id.* A DOC official also opened a letter from the Court containing appeal instructions outside of Christians' presence and removed the appeal instructions, which caused Christians to commit a procedural error and resulted in loss of his appeal and $505 appellate filing fee. *Id*

Because of the defendants' actions, Christians suffered the following injuries: "$505 lost on appeal, relief denied for possbly [sic] successful claim, on merits, prejudice on pleadings from untimely mail and lack of consistent law library, missing legal documents and no instruction on law library or intepretation [sic]." *Id.* at 30 (capitalization in original omitted). Christians claims that Bittinger and Wasko are responsible as top level officials in charge of the mail position. *Id.* at 31. He also claims that the mail officer,[11] Schneider, Unit Coordinator Taylor Yost, Bertsch (as direct supervisor of the Jameson Annex), Hughes, and possibly others were aware of the mailing issues. *Id.* Christians sues Schneider, Yost, Bertsch, and Hughes for violating his First and Fourteenth Amendment rights and sues Bittinger and Wasko for failure to train. *Id.*

---

[11] Christians claims that the mail officer violated his rights, but Christians does not name the mail officer as a defendant in his amended complaint.

### D.    General Information

Christians sues all defendants in their individual and official capacities.[12] Doc. 15 at 3–9.

On Counts I, II, III, VIII, and XIV, Christians seeks $40.00 per day in compensatory damages

per person, $100.00 per day in punitive damages per person or entity, and declaratory and

injunctive relief. *Id* at 38–39. On Count IV, Christians seeks $500,000 for compensatory and

punitive damages. *Id* at 39. On Count V, Christians requests $3,000,000 for compensatory and

punitive damages as well as injunctive and declaratory relief. *Id* On Count VI, Christians seeks

$5,000 in compensatory and punitive damages. *Id.* On Count VII, Christians seeks $9.13 in

compensatory damages as well as declaratory relief. *Id* On Count IX, Christians seeks $500,000

in compensatory/punitive damages for malpractice, $500,000 in compensatory/punitive damages

for other violations, and declaratory and injunctive relief. *Id* On Counts X and XI, Christians

seeks $500,000 in compensatory/punitive damages as well as declaratory and injunctive relief.

*Id* at 38. On Count XII, Christians seeks $10,000 in compensatory/punitive damages as well as

declaratory and injunctive relief. *Id* On Count XIII, Christians seeks $20,000 in compensatory

and punitive damages, declaratory relief, return of exact or better property, and other injunctive

relief. *Id*

---

[12] Christians does not specify whether he is suing Hudson in her individual or official capacity. *See* Doc. 13 at 1. Typically, when a plaintiff's "complaint does not include an 'express statement' that [he] is suing the individual defendants in their individual capacities, we consider [his] suit to be 'against the defendants in their official capacity.' " *Kelly v  City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). This Court is unaware of any controlling authority applying the strict individual capacity pleading requirement to employees of a private entity that contracts to provide services for the state. *See also Davis v  Buchanan Cnty* , 2019 U.S. Dist. LEXIS 220350, at *15 (W.D. Mo. Dec. 23, 2019) ("The [c]ourt is not willing to extend the strict pleading requirement for state officials in civil rights cases to employees of a private entity that performs services for the state, as private employees do not have an official capacity as the term is used under Eleventh Amendment." (internal quotations and citations omitted)). Thus, this Court liberally construes Christians' complaint to allege individual and official capacity claims against Hudson.

## II.   Legal Background

The court must assume as true all facts well pleaded in the complaint. *Est of Rosenberg v Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl Corp v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *See Beavers v Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); *see also Abdullah v Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory"). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now assess each individual claim under 28 U.S.C. § 1915A.

### III.  Discussion

#### A.  Christians' Ongoing Lawsuits

Christians has two pending lawsuits against many of the same defendants in which he

brings claims for inadequate nutrition. *See Christians v. Young*, 4:20-CV-04083-LLP, Doc. 147

(ruling on various motions in that case); *Christians v Christensen*, 4:22-CV-04072-LLP, Doc. 5

(screening complaint in that case). In Christians' first case, 4:20-CV-04083-LLP, he alleges

inadequate nutrition claims against many defendants,[13] including Young, Ponto, Fluke, Cook,

Schieffer, Dreiske, and Hughes.[14] *Christians*, 4:20-CV-04083-LLP, Doc. 27 at 11; *Christians*,

4:20-CV-04083-LLP, Doc. 147 at 51–53.

As this Court analyzed in Christians' second ongoing case, Christians cannot allege

claims that involve the same subject matter and the same defendants as his ongoing lawsuits.

---

[13] Leidholt is also named as a defendant in *Christians*, 4:20-CV-04083-LLP, but Christians only alleged a First Amendment claim against Leidholt. *Christians*, 4:20-CV-04083-LLP, Doc. 27 at 9–11, 14 (dismissing Christians' inadequate nutrition claims against Denny Kaemingk and holding that Christians' First Amendment claim against Kaemingk survived 28 U.S.C. §§ 1915 and 1915A screening). *See also Christians*, 4:20-CV-04083-LLP, Doc. 45 at 4 (granting Christians' motion to substitute Leidholt for Kaemingk). Thus, Christians' inadequate nutrition claims against Leidholt are not duplicative. Wasko was substituted as a defendant for Christians' official capacity claims against Leidholt after Leidholt's employment ended. *See Christians*, 4:20-CV-04083-LLP, Doc. 147 at 3 n.3. Thus, Wasko appears to be sued only in her official capacity on the First Amendment claim, and the current claims against Wasko are not duplicative.

[14] In Christians' first lawsuit, Sullivan was substituted under Rule 25(d) for the official capacity claims against Young and Clark. *Christians*, 4:20-CV-04083-LLP, Doc. 147 at 44 n.13. Christians' inadequate nutrition claims against Young survived screening. *Christians*, 4:20-CV-04083-LLP, Doc. 27 at 11. Thus, Christians has ongoing inadequate nutrition claims against Sullivan. However, Christians' inadequate nutrition claims against Sullivan in his current lawsuit involve later conduct and do not relate to the same conduct or controversy as his ongoing suit. Thus, his claims against Sullivan are not dismissed as duplicative. In Christians' second lawsuit, Bittinger was substitute for Sullivan, who was substituted for Young on Christians' official capacity claims. *Christians*, 4:22-CV-04072-LLP, Doc. 5 at 3 n.1. *See also Christians*, 4:22-CV-04072-LLP, Doc. 16 at 1 n.1. Because Christians' inadequate nutrition claims did not survive screening, Christians' claims against Bittinger are not duplicative. *See Christians*, 4:22-CV-04072-LLP, Doc. 5 at 9.

*Christians*, 4:22-CV-4072-LLP, Doc. 5 at 6–9. Because Christians has again alleged claims that involve the same subject matter and the same defendants as him ongoing lawsuits, this Court restates its analysis dismissing his claims that involve the same subject matter and the same defendants as his ongoing lawsuits.

The Eighth Circuit Court of Appeals has recognized that one of the "prudential limits upon the exercise of the [federal court] jurisdiction bestowed by Congress" is "the principle that federal courts may decline to exercise their jurisdiction in order to prevent duplicative litigation." *Missouri ex rel. Nixon v Prudential Health Care Plan, Inc* , 259 F.3d 949, 952 (8th Cir. 2001); *see also Colo. River Water Conservation Dist v United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation."). In *Prudential Health Care Plan*, the Eastern District of Missouri denied the State of Missouri's motion to remand the case back to state court after Prudential removed it to federal court. *See* 259 F.3d at 951. The district court then granted Prudential's motion to dismiss for failure to state a claim, dismissing the case without prejudice. *Id* The State of Missouri then appealed the dismissal, not on the grounds of the pleading defects identified by the district court, but only as to the district court's refusal to remand to state court. *Id.* At the same time, the State of Missouri "ameliorated the apparent defects in the initial complaint" and filed a new action in state court, which Prudential then removed to federal court. *Id* at 952. The Eighth Circuit dismissed the State of Missouri's appeal in order to prevent duplicative litigation and concluded that "[p]laintiffs may not pursue multiple federal suits against the same party involving the same controversy at the same time." *Id* at 954, 956 (citing *Colo River*, 424 U.S. at 817).

Importantly, the Eighth Circuit applied this principal even though the precise issue before it, whether the district court properly denied the State of Missouri's motion to remand to state court, differed from the substantive breach of contract and fraud claims raised in the State of Missouri's second complaint. *See id* at 951-54; *see also Walton v Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (en banc) (finding that the plaintiff "had no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant" (citations omitted)). Thus, this Court will screen and dismiss Christians' claims that involve the same subject matter and the same defendants as his ongoing lawsuit.

Christians claims that he was not provided adequate nutrition while incarcerated at the SD DOC prison system. Doc. 15 at 11–16, 23–25; Doc. 13 at 1. In Christians' first lawsuit, he brought the insufficient nutrition claims against several defendants named in this lawsuit, including Young, Ponto, Fluke, Cook, Schieffer, Dreiske, and Hughes. *See Christians*, 4:20-CV-4083, Doc. 147 at 22–31, 51–53. Because Christians' claims related to inadequate nutrition against Young, Ponto, Fluke, Cook, Schieffer, Dreiske, and Hughes are duplicative, his claims related to inadequate nutrition against Young, Ponto, Fluke, Cook, Schieffer, Dreiske, and Hughes in their individual and official capacities are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1). Christians also alleges conspiracy claims and state-law claims against Young, Ponto, Fluke, Cook, Schieffer, Dreiske, and Hughes about the inadequate nutrition he received; these claims also include the same subject matter in one of his ongoing suits and are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1). This Court will analyze Christians' remaining nutrition claims.

### B.    Claims Against Summit, Trierweiler, and Waldner

Christians sues Summit, Trierweiler, and Waldner[15] for deliberate indifference to his

conditions of confinement in violation of his Eighth Amendment right to be free from cruel and

unusual punishment, conspiracy to violate his rights by providing inadequate nutrition, and state-

law claims for negligence and negligence infliction of emotional distress because of the weight

loss from his diet [16] Doc. 15 at 23–25. Christian alleges that he lost ninety pounds because

Summit and the Summit Defendants served insufficient calories and inedible food. *Id* Christians

filed multiple complaints with Summit, but they did not change his diet. *Id* He also experienced

significant weight loss while he was in the SHU around March 20, 2021, through April 3, 2021.

*Id.* Christians previously sued Summit and the Summit Defendants for inadequate nutrition in

violation of his Eighth Amendment rights for the same time period alleged in his complaint. *See*

*Christians*, 4:20-CV-04083-LLP, Doc. 185 at 5–8. Thus, Christians' claims related to his diet

against Summit, Trierweiler, and Waldner are barred by the doctrine of res judicata.

The principle behind the doctrine of res judicata, or claim preclusion, is that "[f]inal

judgment on the merits precludes relitigation of a claim on any grounds raised before or any

grounds which could have been raised in the prior action." *Poe v. John Deere Co* , 695 F.2d

1103, 1105 (8th Cir. 1982). "By precluding parties from contesting matters that they have had a

full and fair opportunity to litigate," the doctrine of res judicata protects against "the expense and

---

[15] Christians also sues John and/or Jane Doe(s), executives of Summit. *See* Doc. 15 at 8. John
and/or Jane Doe(s) were not a party to Christians' prior litigation. *See generally Christians*, 4:20-
CV-04083-LLP, Doc. 185. Thus, this Court will analyze Christians' claims against John and/or
Jane Doe(s) separately.
[16] Even if Christians' conspiracy and state-law claims against Summit, Trierweiler, and Waldner
were not barred by res judicata, they would be dismissed under 28 U.S.C. § 1915A(b)(1).
Christians has failed to allege sufficient facts to state a conspiracy claims. *See infra* at 50–52.
This Court also declines to exercise supplemental jurisdiction over Christians' state-law claims.
*See infra* at 52–54.

vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor v Sturgell*, 553 U.S. 880, 892 (2008) (cleaned up). Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Cromwell v. Cnty of Sac*, 94 U.S. 351, 352 (1876)).

Res judicata applies when "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998) (citations omitted). "[W]hether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate." *Murphy v Jones*, 877 F.2d 682, 684–85 (8th Cir. 1989) (citations omitted).

Res judicata is an affirmative defense under Federal Rule of Civil Procedure 8(c)(1). However, the Eighth Circuit has affirmed dismissal of complaints on res judicata grounds at the screening stage. *See Waller v Groose*, 38 F.3d 1007, 1008 (8th Cir. 1994) (per curiam) (discussing the res judicata effect of prior dismissals "on frivolousness determinations for future *in forma pauperis* petitions" (quoting *Denton v. Hernandez*, 504 U.S. 25, 34 (1992))). Although *Waller* considered the preclusive effect of a prior screening dismissal under 28 U.S.C. § 1915 on future screenings, the Eighth Circuit stated that res judicata can apply at the screening stage. *See id*

Christians obtained a final judgment on the merits for his inadequate nutrition claims against Summit, Trierweiler, and Waldner. *See Christians*, 4:20-CV-04083-LLP, Doc. 185 at

11–23; *Christians*, 4:20-CV-04083-LLP, Doc. 186 (dismissing Christians' Eighth Amendment claims against Summit and Summit Defendants with prejudice). Although some of Christians claims are still pending in 4:20-CV-04083-LLP, "[t]he first requirement is met here because res judicata applies to all final claims, even if other claims within a case remain alive." *Blechinger v Sioux Falls Hous & Redevelopment Comm'n*, 2012 WL 174653, at *2 (D.S.D. Jan. 20, 2012) (citing *Lair v Oglesby*, 14 F.3d 15, 17 n.2 (8th Cir. 1993)). Christians also does not claim that this Court lacked jurisdiction over the prior decision. *See* Doc. 15 at 23–25. Christians' prior and current suit both alleged claims relating to deliberate indifference to conditions of confinement around the same timeframe, and Summit, Trierweiler, and Waldner were also named in the prior suit. *Id* ; *Christians*, 4:20-CV-04083-LLP, Doc. 185 at 11–23. Thus, Christians' claims against Summit, Trierweiler, and Waldner in their individual and official capacities are barred by res judicata and dismissed with prejudice for failure to state a claim under 28 U.S.C. § 1915A(b)(1).

### C.   Claims Against Howye

Christians names as a defendant Unit Coordinator Ryan Howye. Doc. 15 at 4. Christians' amended complaint does not allege any claims against Howye. *See generally id* Thus, Christians' claims against Howye are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

### D.   Official Capacity Claims for Money Damages

Christians sues all defendants in their individual and official capacities. *See supra* at 19. Christians sues in their official capacities the following employees of the State of South Dakota: Hanvey, Wasko, Welbig, Sullivan, Swygert, Schneider, Maturan, Howye, Bittinger, Irvin, Paulson, Ponto, Cox, Thelen, Revolorio, Dr. Haynes, Hughes, Bertsch, Dr. Richter, Black, Grassie, Walter, Vanderaa, Lindsay, Benting, Landon, Jackson, Kretcm, Miller, Yost, Pirraglia,

Young, Dreiske, Cook, Fluke, Leidholt, and Schieffer. Doc. 15 at 3–9. Christians also sues

Aramark and the following employees of Aramark in their official capacities: Graham, Mark,

Unknown Dietician, Irizarry, Rainy, Gasson, Gray, Yien, Tonlin, and Hudson. *Id* ; Doc. 13 at 1.

Christians also sues John and/or Jane Doe(s) of Summit in their official capacities. Doc. 15 at 8.

The Supreme Court has held that "a suit against a state official in his or her official

capacity is not a suit against the official but rather is a suit against the official's office." *Will v*

*Mich Dep't of State Police*, 491 U.S. 58, (1989) (citing *Brandon v Holt*, 469 U.S. 464, 471

(1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to

remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants

who seek a remedy against a State for alleged deprivations of civil liberties." *Id* at 66. *See also*

*Carter v. Wasko*, 4:22-CV-04103-RAL, 2023 WL 248233, at *3 (D.S.D. Jan. 18, 2023)

(applying Eleventh Amendment immunity to private companies contracting with the State of

South Dakota to provide services to state prisons).

The Eleventh Amendment generally acts as a bar to suits against a state for money

damages unless the state has waived its sovereign immunity. *Id* Here, Christians seeks monetary

damages against all defendants. Doc. 15 at 38–39. Claims against defendants employed by the

State of South Dakota in their official capacities are the equivalent of claims for money damages

against the State of South Dakota. The State of South Dakota has not waived its sovereign

immunity. Thus, Christians' claims against all defendants in their official capacities for money

damages are dismissed without prejudice under 28 U.S.C. § 1915A(b)(2).

**E.      Official Capacity Claims for Injunctive Relief**

Christians requests injunctive relief on Counts I, II, III, V, VIII, IX, X, XI, XII, XIII, and

XIV. Doc. 15 at 38–39. On Count XIII, Christians requests the return of exact or better property

that was taken from him. *Id* at 38. On Christians' remaining claims, he does not specify what injunctive relief he seeks. *See id* at 38–39. Christians has filed three proposed amended complaints (Docs. 5-1, 10-1, and 12-1) and had multiple opportunities to clarify what injunctive relief he seeks. Because Christians does not clarify what injunctive relief he seeks, his official capacity claims for injunctive relief on Counts I, II, III, V, VIII, IX, X, XI, XII, and XIV are not specific to the claim alleged and the relief sought. Thus, Christians' official capacity claims for injunctive relief on Counts I, II, III, V, VIII, IX, X, XI, XII, and XIV are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

This Court will analyze separately Christians' official capacity claims for injunctive relief under Count XIII and his official capacity claims for declaratory relief under all counts. *See Abdulrazzak v Smith*, 4:17-CV-04058-KES, 2018 WL 4625409, at *16 (D.S.D. Sept. 26, 2018) ("Declaratory and prospective injunctive relief are available as remedies against a state officer in his or her official capacity." (citing *Pulliam v Allen*, 466 U.S. 522, 541 (1984)).

### F.   Individual Capacity Claims for Money Damages and Remaining Official Capacity Claims for Injunctive and Declaratory Relief

"Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official capacity defendants only for injunctive relief." *Brown v Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Christians' individual capacity claims must allege that each individual defendant either participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor.

### 1.    First Amendment Retaliation

Christians alleges First Amendment retaliation claims against Swygert, Bittinger, Schneider, Landon, Bertsch, Vanderaa, Benting, and Lindsay. Doc. 15 at 21, 32–35. In order for a plaintiff to allege a First Amendment retaliation claim, he must show that "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

Here, Christians claims that Swygert locked him in his cell and would not allow him to go to work because he filed a grievance against Swygert. Doc. 15 at 21. "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing *Dixon v Brown*, 38 F.3d 379, 379 (8th Cir. 1994)). Thus, Christians' First Amendment retaliation claim against Swygert in his individual capacity for money damages survives § 1915A screening. "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown*, 662 F.3d at 1161 n.5 (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)). *See also Cmty. Mental Health Servs v Mental Health & Recovery Bd*, 150 F. App'x 389, 401 (6th Cir. 2005). Christians does not request any injunctive or declaratory relief on his First Amendment retaliation claim against Swygert. Doc. 15 at 39. Thus, Christians' First Amendment

retaliation claim against Swygert in his official capacity is dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

Christians also claims that Bittinger, Schneider, Landon, Bertsch, Vanderaa, and Benting retaliated against him in violation of his First Amendment rights because they did not issue him proper shoes after he filed multiple grievances and lawsuits. Doc. 15 at 33. He also claims that Lindsay treated him worse, locked him in his cell, prevented him from traveling to his job, as well as yelled and screamed at him because he reported her prior bad conduct. *Id.* at 34. Thus, Christians' First Amendment retaliation claims against Bittinger, Schneider, Landon, Bertsch, Vanderaa, Benting, and Lindsay in their individual capacities for money damages survive § 1915A screening. Christians' First Amendment retaliation claims against Bittinger, Schneider, Landon, Bertsch, and Benting in their official capacities for declaratory relief and Vanderaa and Lindsay in their official capacities for injunctive and declaratory relief survive § 1915A screening.

### 2.    First Amendment Access to the Courts

Liberally construing Christians' complaint, he alleges a First Amendment access to the courts claim against Wasko, Bittinger, Schneider, Yost, Bertsch, and Hughes  Doc. 15 at 30–31. "The Constitution guarantees prisoners a right to access the courts." *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007). "The Supreme Court has held that 'the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.' " *Entzi v  Redmann*, 485 F.3d 998, 1004–05 (8th Cir. 2007) (quoting *Bounds v  Smith*, 430 U.S. 817, 828 (1977)). To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury as a result of the

defendants' actions. *Lewis v Casey*, 518 U.S. 343, 351 (1996). In order to satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Johnson v Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting *Casey*, 518 U.S. at 353). "The right of access to the courts is satisfied if the prisoner has 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.' " *Zink v. Lombardi*, 783 F.3d 1089, 1108 (8th Cir. 2015) (quoting *Casey*, 518 U.S. at 356).

Here, Christians claims that the Jameson Annex does not provide access to a legal library or a legal assistant to decipher filings. Doc. 15 at 30. He also claims that staff have refused to send his legal mail, opened his legal mail without his permission, and removed appeal instructions provided by the Clerk of Court. *Id* at 30–31. He claims that because of the defendants' actions he lost his appeal and was denied relief on possibly successful claims. *Id* He alleges that Schneider, Yost, Bertsch, and Hughes were informed of the issues allegedly denying Christians' access to the courts. *Id* at 31. Thus, Christians' First Amendment access to the courts claim against Schneider, Yost, Bertsch, and Hughes in their individual capacities for money damages and their official capacities for declaratory relief survives § 1915A screening.

Christians sues Wasko and Bittinger for violating his right to access the court because they are top level administrators in charge of the mail staff. Doc. 15 at 31. Liberally construing Christians' complaint, he alleges a failure to train or supervise claim against Wasko and Bittinger. *Id* at 30–31. One requirement for a failure to train or supervise claim against an individual defendant is that the supervising officer "demonstrated deliberate indifference to or tacit authorization of the offensive acts" after receiving notice of a pattern of unconstitutional acts. *Otey v Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997) (quotation omitted). Christians has

not shown deliberate indifference or tacit authorization by Wasko or Bittinger. Doc. 15 at 31.

Thus, Christians' First Amendment access to the court claim against Wasko and Bittinger in their

individual and official capacities is dismissed without prejudice under § 1915A(b)(1).

### 3.    First Amendment Right to Send and Receive Mail

Liberally construing Christians' complaint, he alleges a First Amendment claim for

violation of his right to send and receive mail against Wasko, Bittinger, Schneider, Yost,

Bertsch, and Hughes. Doc. 15 at 30–31. The Eighth Circuit has recognized that inmates retain a

First Amendment right to "send and receive mail." *Thongvanh v Thalacker*, 17 F.3d 256, 258

(8th Cir. 1994) (citations omitted). The Eighth Circuit applied a four-factor test to prison mail

regulations:

> (1) whether there is a valid rational connection between the regulation and the
> legitimate government interest it purports to further; (2) whether the inmate has an
> alternative means of exercising his constitutional right; (3) the impact that
> accommodation of the inmate's right would have upon others, including inmates as
> well as non-inmates; and (4) the absence of a ready alternative to the regulation.

*Turner v Safley*, 482 U.S. 78, 89 (1987). *Turner*'s standard applies to both incoming and

outgoing mail. *Thongvanh*, 17 F.3d at 259 (citing *Smith v Delo*, 995 F.2d 827, 830 (8th Cir.

1993)).

Christians alleges sufficient facts to state a claim for deprivation of his First Amendment

right to send and receive mail. Christians claims that Schneider, Yost, Bertsch, and Hughes were

aware of the mailing issues. Doc. 15 at 31. Although it is unclear to what extent Christians' mail

was delayed or refused to send entirely, he has alleged sufficient facts for a First Amendment

right to send and receive mail claim against Schneider, Yost, Bertsch, and Hughes in their

individual capacities for money damages and official capacities for declaratory relief to survive

§ 1915A screening.

He also claims that Bittinger and Wasko are "top level administrators in charge of this [mailing] position." Doc. 15 at 31 (capitalization in original omitted). However, he has not demonstrated that Bittinger and Wasko acted with deliberate indifference to or tacit authorization of the offensive acts after receiving notice of a pattern of unconstitutional acts. *See id.*; *see also Otey*, 121 F.3d at 1155 (citation omitted). Thus, Christians' First Amendment access to the courts claim against Bittinger and Wasko in their individual and official capacities is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

### 4. Fourth Amendment Unreasonable Search

Christians alleges a Fourth Amendment claim against Swygert for unreasonable body search. Doc. 15 at 19. The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. "In determining reasonableness, 'courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.' " *United States v Williams*, 477 F.3d 974, 975 (8th Cir. 2007) (quoting *Bell v Wolfish*, 441 U.S. 520, 559 (1979)). "[P]rison inmates are entitled to Fourth Amendment protection against unreasonable searches of their bodies, although a prison inmate has a far lower expectation of privacy than do most other individuals in our society." *LeVine v Roebuck*, 550 F.3d 684, 687 (8th Cir. 2008) (internal citations and quotations omitted).

Here, Christians claims that Swygert on three separate occasions "made [him] strip naked and put multiple fingers in [Christians'] anus moving them rapidly back and forth." Doc. 15 at 19. Thus, Christians' Fourth Amendment unreasonable search claim against Swygert in his

individual capacity for money damages and Swygert's official capacity for declarative relief[17] survives § 1915A screening.

### 5.    Eighth Amendment Sexual Assault

Christians claims that Swygert sexually assaulted him under the guise of a search for contraband in violation of his Eighth Amendment rights. Doc. 15 at 19. Christians also sues Wasko for failure to train or terminate Swygert. *Id*

The Eighth Circuit has held that "the sexual assault of an inmate by a guard violates the inmate's constitutional rights." *Kahle v. Leonard*, 477 F.3d 544, 553 (8th Cir. 2007) *overruled* on other grounds by *Pearson v Callahan*, 555 U.S. 223 (2009). "[S]exual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and . . . can, in certain circumstances constitute the 'unnecessary and wanton infliction of pain' " in violation of the Eighth Amendment. *Freitas v Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoting *Whitley v Albers*, 475 U.S. 312, 319 (1986)). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer acted with a sufficiently culpable state of mind." *Id* (citing *Hudson v McMillian*, 503 U.S. 1, 8 (1992)). The Eighth Circuit has "concluded that a 'nonroutine' patdown search accompanied by verbal sexual harassment of an inmate is harmful enough to violate the Eighth Amendment." *Glover v. Paul*, 78 F.4th 1019, 1022 (8th Cir. 2023) (citing *Berry v Oswalt*, 143 F.3d 1127, 1133 (8th Cir. 1998)).

---

[17] Christians requests declaratory relief against Swygert in his official capacity. Doc. 15 at 39. Although Swygert is no longer employed at the SDSP, Doc. 6, this Court is unaware of any authority permitting dismissal of official capacity claims against terminated employees without substitution under Federal Rule of Civil Procedure 25(d) simply because the alleged wrongdoer's acts were isolated incidents unrelated to any conduct by the successor.

Here, Christians claims that Swygert made sexual advances toward him and sexually assaulted him during non-procedure contraband searches. Doc. 15 at 19–20. Christians claims that Swygert caused him pain and bleeding from his rectum and resulted in a constant sore. *Id.* at 19. Christians also claims that Swygert made sexual advances towards him. *Id* Thus, Christians' Eighth Amendment sexual assault claim against Swygert in his individual capacity for money damages and official capacity for declaratory relief survives § 1915A screening. *See supra* n.17.

Christians claims that Wasko failed to train or terminate Swygert. *Id* at 19. Christians claims that Swygert engaged in this conduct with other inmates, but he does not allege that Wasko "demonstrated deliberate indifference to or tacit authorization of the offensive acts" after receiving notice of a pattern of unconstitutional acts, as is required under a failure to train or supervise claim. *Otey*, 121 F.3d at 1155 (quotation omitted). Thus, Christians' Eighth Amendment sexual assault claim against Wasko for failure to train is dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

### 6.   Eighth Amendment Conditions of Confinement

Christians alleges Eighth Amendment conditions of confinement claims against Welbig, Swygert, Hanvey, Schneider, Sullivan, Maturan, Aramark, Aramark Employees,[18] Dr. Richter, Bittinger, Wasko, Black, Revolorio, Jackson, Pirraglia, Landon, and Leidholt. Doc. 15 at 11–16, 23–25; Doc. 13 at 1. *See supra* at 21–23 (dismissing inadequate nutrition claims that would be duplicative).

---

[18] Christians references Aramark Employees. Doc. 15 at 15. For the purposes of screening, this Court assumes that "Aramark Employees" includes all employees of Aramark named as defendants in the amended complaint: Anthony Graham, Mark, C. Irizarry, Rainy, Gasson, Gray, Yien, Kayla Tonlin, and Susan Hudson. *Id.* at 3–9.

"[T]he Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane ones.' " *Williams v Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer v Brennan*, 511 U.S. 825, 832 (1994)). The Supreme Court has clarified that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 9 (citation and internal quotation omitted). The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety[.]" *Helling v McKinney*, 509 U.S. 25, 32 (1993) (citation omitted).

In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that (1) objectively, the deprivation was sufficiently serious to deprive him of the minimal civilized measures of life's necessities or to constitute a substantial risk of serious harm to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to inmate health or safety. *Simmons v Cook*, 154 F.3d 805, 807 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 834). An Eighth Amendment challenge to conditions of confinement must examine the totality of the circumstances. *Villanueva v George*, 659 F.2d 851, 854 (8th Cir. 1981) (en banc). Even if no single condition would be unconstitutional in itself, the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment. *See id* ; *see also Tyler v. Black*, 865 F.2d 181, 183 (8th Cir. 1989) (en banc).

> a.    **Claims Against Welbig, Swygert, Hanvey, Schneider, Sullivan, Maturan, Aramark Employees, Dr. Richter, Bittinger, Wasko, Black, Revolorio, Jackson, Pirraglia, Landon, Leidholt, and John and/or Jane Doe(s)**

Liberally construing Christians' complaint; he alleges Eighth Amendment deliberate indifference to conditions of confinement claims against Welbig, Swygert, Hanvey, Schneider, Sullivan, Maturan, Aramark, Aramark Employees, Dr. Richter, Bittinger, Wasko, Black,

Revolorio, Jackson, Pirraglia, Landon, Leidholt, and John and/or Jane Doe(s). Doc. 15 at 11–16,
23–25; Doc. 13 at 1.

Christians claims that Welbig removed his prescribed additional protein because Swygert
falsely told medical staff that Christians was giving away his extra protein. Doc. 15 at 11.
However, Welbig unknowingly relying on false information does not state an Eighth
Amendment claim. Hanvey also denied Christians his prescribed additional protein. *Id*
Schnieder, Sullivan, and Maturan received grievances describing how Christians was denied the
prescribed additional protein, but they did not take any action to reinstate his prescribed protein.
*Id.* Because of the denial of protein, Christians claims that his muscles have atrophied, he lost
fifty pounds, and he suffered from mental distress. *Id*

Christians claims that he was provided inadequate nutrition by Aramark Employees,[19] to
whom he wrote multiple grievances. *Id.* at 12. He also claims that Dr. Richter did not properly
order Christians' dietary restrictions to assist with his high cholesterol, and Dr. Richter did not
remedy the error after receiving notice from Christians, which is a negligence claim but not
rising to deliberate indifference. *Id* at 13. Black and Revolorio refused to change Christians' diet
after being notified that the diet ordered was not available.[20] *Id* at 14. Pirraglia refused to correct

---

[19] Christians generally claims that he wrote grievances to Aramark, but he does not identify any
conduct by any individual employee that amounts to deliberate indifference. Doc. 15 at 12; Doc.
13 at 1. Thus, Christians fails to allege a claim for deliberate indifference against Aramark
Employees Graham, Mark, C. Irizarry, Rainy, Gasson, Gray, Yien, Tonlin, and Hudson.

[20] In one of Christians' ongoing suits, he alleged that he experienced high cholesterol because of
his diet, but the DOC defendants were granted summary judgment on his Eighth Amendment
claim for his high cholesterol. *See Christians*, 4:20-CV-04083-LLP, Doc. 147 at 36–38. In his
current suit, Christians claims that his diet was not properly ordered to prevent him from
receiving foods that would increase his cholesterol. Doc. 15 at 12–13. Although Christians'
received a final judgment dismissing his Eighth Amendment claims for high cholesterol because
of his diet in 4:20-CV-04083-LLP, Dr. Richter, Black, and Revolorio were not defendants to that
case. *See Wintermute v Kan Bankers Sur Co*, 630 F.3d 1063, 1067 (8th Cir. 2011) ("Under *res
judicata*, a judgment on the merits in an earlier lawsuit bars a second suit involving the same

Christians' diet. *Id* at 15. Wasko was also notified of Christians' dietary concerns and weight loss. *Id.* at 14. Landon also made direct decisions about Christians' diet. Doc. 13 at 1. Christians alleges that John and/or Jane Doe(s) viewed the prison in order to correct the inadequate nutrition and qualify of food concerns, but nothing was done. Doc. 15 at 24. Christians also claims that Wasko, Bittinger, Jackson, Aramark, and Aramark's employees conspired to provide inadequate nutrition at the cost of inmates' health, but Christians cannot make a claim on behalf of others. *Id* at 15. Christians claims that Leidholt conspired deprive inmates of inadequate nutrition and was aware that the diet was inadequate but tried to claim that the diet was adequate. *Id* at 24–25.

Although some of his claims constitute negligence instead of deliberate indifference, Christians has alleged sufficient facts for his Eighth Amendment deliberate indifference to conditions of confinement claims against Swygert, Schneider, Maturan, Black, Revolorio, Pirraglia, and John and/or Jane Doe(s)[21] in their individual capacities for money damages and their official capacities for declaratory relief to survive § 1915A screening. Christians has also alleged sufficient facts for his Eighth Amendment deliberate indifference to conditions of confinement claims against Leidholt and Sullivan in only their individual capacities for money

---

parties based on the same cause of action." (quoting *Pro Mgmt Assocs v KPMG LLP*, 345 F.3d 1030, 1032 (8th Cir. 2011) (per curiam)). Thus, Christians' Eighth Amendment deliberate indifference claims for his high cholesterol are not barred by res judicata at the screening stage.
[21] Christians must identify John and/or Jane Doe(s) to serve them. This Court bears no responsibility to figure out for Christians to whom he refers and intends to sue. Christians also must explain why he has not previously sued and served John and/or Jane Doe(s). *See Christians*, 4:20-CV-04083-LLP, Doc. 185 at 10–11 (dismissing claims against unknown defendants).

damages and against Wasko and Bittinger in their official capacities for declaratory relief to survive § 1915A screening.[22]

### b.    Claims Against Aramark

Christians sues Aramark for inadequate nutrition in violation of his Eighth Amendment rights. Doc. 15 at 12. Under § 1983, a corporation cannot be held vicariously liable for the acts of its employees. *Burke v N D Dep't of Corr & Rehab*, 294 F.3d 1043, 1044 (8th Cir. 2002) (per curiam) (citing *Sanders v Sears, Roebuck & Co.*, 984 F.2d 972, 975–76 (8th Cir. 1993)). "[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies. The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983." *Sanders*, 984 F.2d at 975–76 (citing *Monell v. Dep't of Soc Servs*, 436 U.S. 658, 690, 694 (1978)).

Here, Christians claims that he wrote kites and letters to Aramark supervisors informing them about his weight loss and medical concerns, but they did not adjust his diet or reply to his concerns. Doc. 15 at 12. Christians also claims that Aramark refused to provide the cardiac diet that he was prescribed. *Id.* at 14. Christians claims that DOC employees, "Aramark and its employees conspired to provide inadequate nutrition to reduce budget costs and make profit at the expense of inmate health and violating [inmates'] rights[.]" *Id* at 15 (capitalization in original omitted). Christians has sufficiently alleged that Aramark had a custom or policy of providing insufficient nutrition to reduce budget costs for his Eighth Amendment conditions of confinement claim against Aramark survive § 1915A screening.

---

[22] Because Leidholt and Sullivan are no longer employed at the SDSP, their successors—Wasko and Bittinger—are automatically substituted under Rule 25(d) on Christians' official capacity claims against Leidholt and Sullivan.

### 7.    Eighth Amendment Deliberate Indifference to Serious Medical Needs

Liberally construing Christians' amended complaint, he alleges an Eighth Amendment claim for deliberate indifference to his medical needs against Welbig, Swygert, Hanvey, Schneider, Sullivan, Bittinger, Maturan, Dr. Richter, Black, Revolorio, Miller, Jackson, Pirraglia, Wasko, Thelen, Kretcm, Cox, Grassie, Dr. Haynes, Landon, Bertsch, Vanderaa, Benting, and Walter. Doc. 15 at 11–17, 27–29, 32–33, 36–37.

"[D]eliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id* at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *Jolly v Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing *Est of Rosenberg*, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he or she] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id* (citing *Coleman*, 114 F.3d at 784). "A serious medical

need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d at 784 (internal quotation omitted). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998) ("[C]onstructive knowledge, or the 'should-have-known' standard, is not sufficient to support a finding of deliberate indifference . . . .").

Here, Christians claims that Welbig, Swygert, Hanvey, Dr. Richter, Black, Revolorio, Jackson, and Pirraglia were aware of the cancellation, change, or nonenforcement of his dietary restrictions; he alleges that his dietary restrictions should have been properly enforced and should not have been changed or cancelled. Doc. 15 at 11–16. Christians filed grievances with Schneider, Sullivan, Maturan about the dietary restriction issues, but they did not resolve his dietary restriction concerns. *Id.*

Christians also alleges deliberate indifference claims for treatment of his OCD at the SDSP. *See generally id.* Cox allegedly changed Christians' prescriptions for his OCD treatment to ineffective levels, but he has not alleged facts showing that she was deliberately indifferent to an objectively serious medical need. *Id.* at 26–28. Christians claims that Thelen failed to train, supervise, or monitor Cox, which is no more than a negligence claim. *Id.* at 28. Miller did not respond to Christians' request for an appointment, which does not under the circumstances state an Eighth Amendment claim. *Id.* Grassie denied Christians' requests to call mental health, which in and of itself does not state an Eighth Amendment claim. *Id.* at 26. Christians also was denied music and chewing gum to help with the symptoms caused by his OCD. *Id.* at 17. Christians

41

notified Thelen, Kretcm, Schneider, Bittinger, and Wasko about the denial of chewing gum and music, but he did not receive any remedy. *Id.* Christians was removed from his sleep aids, which he received to assist with his insomnia caused by his OCD.[23] *Id* at 36. He requested accommodations and filed grievances to Maturan, Walter, Bittinger, and Wasko, but his requests were denied. *Id.* at 37. Christians has alleged insufficient facts for his claims for failure to provide chewing gum, music, and sleep aids to rise to a violation of the Eighth Amendment. Thus, Christians Eighth Amendment deliberate indifference to serious medical needs claims for failure to provide chewing gum, music, and sleep aids are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

Christians claims that he was not provided the proper footwear, which caused lacerations and resulted in scarring. *Id.* at 32–33. Christians spoke with Bittinger about the footwear, but she did not resolve the issue and did not respond to his kite. *Id.* at 33. He also sues Vanderaa and Schneider because they were the unit managers in charge of ordering shoes. *Id* Christians claims that Landon denied his request for shoes. *Id.* Benting was informed of Christians' shoe concerns but did not resolve the issue. *Id* Christians also sues Bertsch, but he does not allege any personal involvement by Bertsch. *Id* ; *Parrish*, 594 F.3d at 1001. Thus, Christians' Eighth Amendment deliberate indifference claim against Bertsch in her individual capacity for money damages is dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

---

[23] In *Christians*, 4:20-CV-04083, Christians claims that he suffered from insomnia because of his poor diet. Doc. 117 at 18–19. In his current complaint, he alleges that his insomnia stems from his removal from his sleep medication due to an apparently recent Department of Corrections' policy change. Doc. 15 at 36–37. Thus, Christians' Eighth Amendment deliberate indifference claims for his insomnia do not appear to be duplicative or barred under res judicata, but it is barred as not being an objectively serious medical need.

Although some of Christians' claims appear to be mere disagreement with treatment methods, this Court cannot say at this stage that the diet and shoe portions of Christians' Eighth Amendment deliberate indifference to serious medical needs claims are wholly without merit. Thus, Christians' Eighth Amendment deliberate indifference to serious medical needs claims against Welbig, Swygert, Hanvey, Schneider, Sullivan, Maturan, Bittinger, Dr. Richter, Black, Revolorio, Jackson, Pirraglia, Landon, Vanderaa, and Benting in their individual capacities for money damages and their official capacities for declaratory relief survive § 1915A screening

### 8.    Fourteenth Amendment Equal Protection

Christians sues Swygert, Wasko, Bittinger, Schneider, Taylor, Yost, Bertsch, Hughes, Lindsay, and Vanderaa for violation of his Fourteenth Amendment right to equal protection. Doc. 15 at 21, 30–31, 34–35. The equal protection clause of the Fourteenth Amendment requires that the government "treat similarly situated people alike," a protection that applies to prisoners. *Murphy v. Mo Dep't of Corr.*, 372 F.3d 979, 984 (8th Cir. 2004) (quoting *Rouse v Benton*, 193 F.3d 936, 942 (8th Cir. 1999)). To show an equal protection violation, Christians must show: (1) he is treated differently than a similarly situated class of inmates, (2) the different treatment burdens a fundamental right, and (3) there is no rational relation between the different treatment and any legitimate penal interest. *Id* (citing *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc)). A plaintiff must first demonstrate that he was treated "differently than others who were similarly situated to h[im]." *Klinger v Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994). *See also In re Kemp*, 894 F.3d 900, 910 (8th Cir. 2018) ("[d]issimilar treatment of dissimilarly situated persons does not violate equal protection" (alteration in original) (quoting *Klinger*, 31 F.3d at 731)). An equal protection violation also requires "an intent to discriminate." *In re Kemp*, 894 F.3d at 910.

An equal protection claim has been recognized through a "class of one" where a "plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v Olech*, 528 U.S. 562, 564 (2000). The Eighth Circuit applied a class of one analysis in the prison setting to an inmate's allegations of discrimination because the parole board denied him parole but granted parole to similarly situated inmates. *Nolan v Thompson*, 521 F.3d 983, 989 (8th Cir. 2008). In *Nolan*, the Eighth Circuit held that "[a] class-of-one plaintiff must therefore 'provide a specific and detailed account of the nature of the preferred treatment of the favored class,' especially when the state actors exercise broad discretion to balance a number of legitimate considerations." *Id.* at 990 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214-15 (10th Cir. 2004)).

Here, Christians claims that Swygert treated him different than other inmate workers because Christians filed a grievance against him. Doc. 15 at 21. Christians also claims that Lindsay and Vanderaa treated him differently because he filed grievances against them. *Id.* at 34–35. When analyzing an equal protection claim in an employment law context, the Eighth Circuit has held that "the right to be free from retaliation is clearly established as a first amendment right and as a statutory right under Title VII; but no clearly established right exists under the *equal protection* clause to be free from retaliation. We have only recognized that § 1983 provides a vehicle for redressing claims of retaliation *on the basis of the First Amendment*." *Burton v Martin*, 737 F.3d 1219, 1237 (8th Cir. 2013) (internal citations and quotations omitted). Thus, Christians' retaliation claims against Swygert, Lindsay, and Vanderaa that are guised as an equal protection claim are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1). This Court already

analyzed Christians' retaliation claims against Swygert, Lindsay, and Vanderaa. *See supra* at 29–30.

Christians also alleges equal protection claims against Wasko, Bittinger, Schneider, Taylor, Yost, Bertsch, and Hughes because inmates at other facilities are allowed to use computers and because at least two inmates at the Jameson Annex are allowed to use a computer for their legal work. Doc. 15 at 30–31. Inmates do not have a fundamental right to use or possess computers. *See Am Inmate Paralegal Assoc v Cline*, 859 F.2d 59, 61 (8th Cir. 1988) (per curiam) ("Prison inmates have no constitutional right of access to a typewriter[.]"); *Hughbanks v Fluke*, 4:21-CV-04167-KES, 2023 WL 1930334, at *6 (D.S.D. Feb. 10, 2023) ("Prisoners do not have a constitutional right to possess or use typewriters or computers."). Because Christians cannot allege that he was treated differently because of a protected class or a fundamental right, Christians can only allege an equal protection claim as a class of one. Christians' equal protection claim alleging that he is treated differently than inmates at other institutions fails to state a claim because they are not similarly situated. Doc. 15 at 31. For Christians' equal protection claim that he is denied his request to use a computer in the library, his claim is dismissed because he does not claim that the different treatment is intentional and does not provide a "specific and detailed account of the nature of the preferred treatment of the favored class[.]" *Nolan*, 521 F.3d at 989 (citation omitted). *See also* Doc. 15 at 31. Thus, Christians' equal protection claims against Wasko, Bittinger, Schneider, Taylor, Yost, Bertsch, and Hughes are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

### 9. Americans with Disabilities Act (ADA)

Christians alleges claims for retaliation and intentional discrimination in violation of the Americans with Disabilities Act (ADA) against Maturan, Walter, Bittinger, and Wasko, but

Christians does not articulate which claims he brings under the ADA. Doc. 15 at 36–37. This
Court liberally construes Christians' complaint to allege ADA claims for intentional
discrimination, failure to make reasonable accommodation, and retaliation. *Id See also Peebles
v Potter*, 354 F 3d 761, 765 (8th Cir. 2004); *Rinehart v Weitzell*, 964 F.3d 684, 689 (8th Cir.
2020). Title II of the ADA states that "no qualified individual with a disability shall, by reason of
such disability, be excluded from participation in or be denied the benefits of the services,
programs, or activities of a public entity, or be subjected to discrimination by any such entity."
42 U.S.C. § 12132; *see also Mason v. Corr Med Servs , Inc* , 559 F.3d 880, 886 (8th Cir. 2009).
Title V of the ADA prohibits discrimination against "any individual because such individual has
opposed any act or practice made unlawful by [the ADA.]" 42 U.S.C. § 12203(a).

### a.    Intentional Discrimination

Liberally construing Christians' complaint, he alleges an ADA claim against Maturan,
Walter, Bittinger, and Wasko for intentional discrimination, also known as disparate treatment.
*See* Doc. 15 at 36–37; *see also Peebles*, 354 F.3d at 765. "In disparate treatment cases, a
similarly situated disabled individual is treated differently because of his disability than less- or
non-disabled individuals. The key element is discriminatory intent." *Peebles*, 354 F.3d at 766
(citing *Reeves v Sanderson Plumbing Prods Inc* , 530 U.S. 133, 153 (2000)). The Eighth Circuit
has identified that OCD was a disability under the ADA when the condition affected the
plaintiff's ability to eat, drink, and concentrate. *Amir v St Louis Univ* , 184 F.3d 1017, 1027 (8th
Cir. 1999). Christians claims that his OCD causes mental pain as well as difficulty sleeping and
concentrating. Doc. 15 at 26, 36–37. Thus, for the purposes of screening, he has sufficiently
alleged that he suffers from a disability under the ADA. *See id* ; 42 U.S.C. § 12102(1) (defining
"disability" under the ADA). Although Christians claims that Maturan said his ADA "requests

were also denied specifically due to [his] mental illness[,]" Christians has not alleged that he was

treated differently than less- or non-disabled individuals, as *Peebles* requires. Doc. 15 at 36–37

(capitalization in original omitted). *See also Peebles*, 354 F.3d at 766 (citing *Reeves*, 530 U.S. at

153). Thus, Christians' ADA claim for intentional discrimination against Maturan, Walter,

Bittinger, and Wasko is dismissed without prejudice for failure to state a claim upon which relief

may be granted under 28 U.S.C. § 1915A(b)(1).

### b.      Failure to Make Reasonable Accommodations

Christians alleges an ADA claim against Maturan, Walter, Bittinger, and Wasko for

failure to make reasonable accommodations. Doc. 15 at 36–37. A failure to provide reasonable

accommodations claim requires that the show:

> (1) that he is a qualified individual with a disability; (2) that he was excluded from
> participation in or denied the benefits of the [penitentiary's] services, programs, or
> activities, or was otherwise subjected to discrimination by the [penitentiary]; and
> (3) that such exclusion, denial of benefits, or other discrimination was by reason of
> his disability.

*Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010) (per curiam). Showing that

exclusion was motivated by a discriminatory purpose is not required to show that was "by reason

of his disability[;]" the plaintiff need only show that his exclusion was caused by his disability.

*See Layton v. Elder*, 143 F.3d 469, 470–72 (8th Cir. 1998).

For the purposes of screening, Christians has shown that he suffers from a disability

under the ADA. *See supra* at 46. Christians claims that he was denied his request for sleep

accommodations and for accommodations with legal work. *Id.* Christians only makes conclusory

allegations that he was discriminated against; he does not show that he was excluded from

services, programs, or activities or subjected to discrimination. *See id.* Thus, Christians' ADA

47

claim for failure to make reasonable accommodations against Maturan, Walter, Bittinger, and Wasko is dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

### c.    Retaliation

Christians also alleges an ADA retaliation claim against Maturan, Walter, Bittinger, and Wasko. Doc. 15 at 36–37. An ADA retaliation claim requires that the plaintiff show that "(1) he engaged in statutorily protected activity; (2) adverse action was taken against him; and (3) a causal connection exists between the adverse action and protected activity." *Rinehart*, 964 F.3d at 689. Here, Christians claims that he filed grievances for discrimination based on his disability, but his grievances were denied because they were not an ADA issue. Doc. 15 at 37. Christians has not shown that adverse action was taken against him because he engaged in a protected activity. *See id.* Thus, Christians' ADA retaliation claim against Maturan, Walter, Bittinger, and Wasko is dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

### 10.    Rehabilitation Act

Christians claims that Maturan, Walter, Bittinger, and Wasko discriminated against him in violation of the Rehabilitation Act, 29 U.S.C. § 701 et seq. Doc. 15 at 36. Under the Rehabilitation Act,

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). To allege a prima facie case under the Rehabilitation Act, Christians must allege that "1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability" as well as that "the program or activity from which he is excluded receives

federal assistance." *Randolph v Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999) (citations omitted) (explaining that the requirements to state an ADA and a Rehabilitation Act claim are the same except that the Rehabilitation Act adds a federal funding requirement).

For the purposes of screening, Christians sufficiently alleges that he suffers from a disability: OCD. Doc. 15 at 36; *Neudecker v Boisclair Corp* , 351 F.3d 361, 364–65 (8th Cir. 2003) (per curiam) (citing *Amir*, 184 F.3d at 1027) (holding that OCD sufficiently qualified as a disability under the Rehabilitation Act to permit a claim to survive a motion to dismiss). Christians claims that he was denied medication and sleep accommodations. Doc. 15 at 36–37. Maturan allegedly told Christians that his "requests were also denied specifically due to [his] mental illness (disability)." *Id* at 37 (capitalization in original omitted). He also claims that he was denied his request for assistance with legal help because of his mental fog and cognitive decline. *Id.* However, Christians does not claim that he qualified for a federally-funded benefit or program nor that he was excluded from a federally-funded benefit or program. *Id* at 36–37. Even if he had alleged that he was denied a federally-funded benefit, his claims generally relate to medical care, *id* , and the Eighth Circuit has held that claims under the Rehabilitation Act cannot be based on medical treatment decisions *Dinkins v Corr Med Servs* , 743 F.3d 633, 634 (8th Cir. 2014) (per curiam) (citing *Burger v Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (per curiam)). Thus, Christians' Rehabilitation Act claims against Maturan, Walter, Bittinger, and Wasko in their official capacities are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1). Claims under the Rehabilitation Act cannot be brought against defendants in their individual capacities. *Dinkins*, 743 F.3d at 634 (8th Cir. 2014); *Landman v. Kaemingk*, 4:18-CV-04175-KES, 2020 WL 3608288, at *2 (D.S.D. July 2, 2020)  Thus, Christians' Rehabilitation

Act claims against Maturan, Walter, Bittinger, and Wasko in their individual capacities are dismissed with prejudice under 28 U.S.C. § 1915A(b)(1).

### 11.   Conspiracy

Liberally construing Christians' complaint, he alleges a civil conspiracy claim under 42 U.S.C. §§ 1983 and 1985 against Aramark, Aramark Employees, Bittinger, Wasko, Jackson, and Pirraglia claiming they "conspired to provide inadequate nutrition to reduce budget costs and make profit at the expense of inmate health[.]" Doc. 15 at 15 (capitalization in original omitted). *See also id.* at 1, 12–14, 16. He alleges that "in essence they made a plan to tell us (inmates) we are being provided 2700 calories daily while knowingly and purposely providing around 1500 calories daily of nutritious food[.]" *Id.* at 16 (capitalization in original omitted). He also claims that Leidholt and John and/or Jane Doe(s) "conspired [with other defendants] to deprive inmates food and adequate nutrition in an effort to reduce budget costs[.]" *Id* at 24–25.

### a.   Conspiracy Under § 1983

To allege a civil conspiracy claim under § 1983, the plaintiff must show: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." *Livers v  Schenck*, 700 F.3d 340, 360–61 (8th Cir. 2012) (citation omitted). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citing *Askew v  Millerd*, 191 F.3d 953, 957 (8th Cir. 1999)). A plaintiff can show the existence of a conspiracy through circumstantial evidence, but a plaintiff must allege "specific facts tending to show" that the defendants reached an agreement to deprive the plaintiff of a constitutional right or a meeting of the minds. *See Murray*

*v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010). Here, Christians claims that the defendants conspired to serve inmates insufficient nutrition to save money without alleging any facts showing that the defendants reached an agreement to deprive him or a constitutional right or a meeting of the minds. Doc. 15 at 15–16. Thus, Christians' § 1983 civil conspiracy claim against Aramark, Aramark Employees, Bittinger, Wasko, Jackson, Landon, Pirraglia, Leidholt, and John and/or Jane Doe(s) is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b)(1).

### b.    Conspiracy Under § 1985

Christians also alleges a civil conspiracy claim against Aramark, Aramark Employees, Bittinger, Wasko, Jackson, Pirraglia, Landon, Leidholt, and John and/or Jane Doe(s) under 42 U.S.C. § 1985. Doc. 15 at 1, 15–16, 24–25. However, Christians does not specify which section of § 1985 his claim arises under. *Id* Christians has not alleged facts sufficient for a claim to arise under §§ 1985(1) and (2). To state a claim under § 1985(3), the plaintiff must allege:

> (1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to deprive h[im] either directly or indirectly of h[is] civil rights; (3) that a conspirator did an act in furtherance of the object of the conspiracy; and (4) damages, shown by demonstrating either injury to person or property or the deprivation of a civil right.

*Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999). "In order to state a claim for conspiracy under § 1985, a plaintiff 'must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement.' " *Kelly v  City of Omaha*, 813 F.3d 1070, 1077–78 (8th Cir. 2016) (quoting *City of Omaha Emps  Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989)). For § 1985(3) to apply, "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v  Breckenridge*, 403 U.S. 88, 102 (1971). Here, Christians does not allege

sufficient facts to show a conspiracy existed or that a conspiracy was based on racial or class-based discrimination. Doc. 15 at 1, 15–16, 24–25. Thus, Christians § 1985 conspiracy claim against Aramark, Aramark Employees, Bittinger, Wasko, Jackson, Pirraglia, Landon, Leidholt, and John and/or Jane Doe(s) is dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

### 12.    State-Law Claims

Christians alleges claims arising under South Dakota law, including negligence, medical malpractice, negligent infliction of emotional distress, intentional infliction of emotional distress, and a small claims action.[24] *See* Doc. 15 at 11–24, 26–29, 34–37. In an action where the district courts have original jurisdiction, "the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction if

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). "An abuse of discretion occurs where the district court fails to consider an important factor, gives insignificant weight to an irrelevant or improper factor, or commits a clear error of judgment in weighing those factors." *Gen Motors Corp v Harry Brown's, LLC,*

---

[24] Even if this Court exercised supplemental jurisdiction over Christians' state-law claims, a federal court is not the proper jurisdiction to initiate a South Dakota state-law small claims action. *See* SDCL § 15-39-69 (stating that venue for a small claims action under South Dakota law is limited to "the county of the residence of the defendant, if the defendant is a natural person, or the county in which the cause of action arose[,]" or for a corporation, limited liability company, or partnership, venue is limited to any county in which the defendant has its place of business)

563 F.3d 312, 316 (8th Cir. 2009). As the Eighth Circuit has stated, the Supreme Court

recognized that district courts should consider the following underlying interests of supplemental

jurisdiction: comity, fairness, judicial economy, and convenience. *Hunter v. Page Cnty* , 102

F.4th 853, 870 (8th Cir. 2024) (citing *Marianist Province of U S. v. City of Kirkwood*, 944 F.3d

996, 1003 (8th Cir. 2019)). The Eighth Circuit has stated that "[t]he judicial resources of the

federal courts are sparse compared to the states. We stress the need to exercise judicial restraint

and avoid state law issues wherever possible." *Condor Corp  v  St  Paul*, 912 F.2d 215, 220 (8th

Cir. 1990).

This Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367 because

state-law immunity poses novel or complex issues of state law and provides an exceptional

circumstance with compelling reasons to decline jurisdiction. Christians alleges state-law claims

against many defendants who may be immune under South Dakota Codified Law. *See* SDCL

§ 3-21-8 (limiting liability for persons, political subdivisions, and the state for failure to provide

sufficient equipment, personnel, programs, facilities, or services in a prison or correctional

facility); SDCL § 3-21-9(5) (limiting liability for persons, political subdivisions, and the state for

injury caused by "[s]ervices or programs administered by or on behalf of the prison, jail, or

correctional facility"); SDCL § 3-21-10 ("No waiver of state immunity by statute or, where

permitted, by any officer or agent of the state may constitute or be interpreted as a waiver of the

state's immunity from lawsuits in federal court or the courts of any jurisdiction other than the

South Dakota Unified Judicial System."); SDCL § 3-22-7 (describing recovery from a public

entity pool for liability); SDCL § 21-32-17 (limiting liability of employees when performing

ministerial or discretionary acts within the scope of their employment or agency); *Kyllo v*

*Panzer*, 535 N.W.2d 896, 903 (S.D. 1995) (holding that SDCL § 21-32-17 is unconstitutional in

part as to ministerial acts). The immunity statutes are promulgated by the South Dakota legislature, and it serves the interests of justice for the application of South Dakota immunity statutes as to state employees to be determined by the state courts. *See E H. v Barrilleaux*, 519 F. Supp. 3d 328, 342 (E.D. La. Jan. 15. 2021); *Bingham v Jefferson Cnty*, 2011 U.S. Dist. LEXIS 164531, at *11 (E.D. Tex. July 15, 2011) (denying leave to amend because claims involved interpreting immunity statutes, which was a complex issue, and declining to exercise supplemental jurisdiction).

South Dakota Codified Law also imposes notice requirements for recovery of damages, which are not required for Christians' federal claims. *See* SDCL § 3-21-2. It is unclear from Christians' filings that he provided the requisite notice under state law. *See generally* Doc. 15. Thus, this Court finds it compelling in the interests of comity and fairness to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c). Christians' state-law claims are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

## REQUEST TO RECEIVE AN UPDATED DOCKET SHEET

Christians requests that he receive an updated docket sheet to show receipt of materials previously sent. Doc. 13-1. Christians' request to receive an updated docket sheet, Doc. 13-1, is granted. The Clerk of Court shall send Christians a current copy of the docket sheet.

## MOTION TO ADD DEFENDANTS

Christians moves to add four defendants: Sergeant Deppe, Sergeant Patton, Aramark Employee/Supervisor Mark, and Aramark Employee/Supervisor Mary Ann Mason. Doc. 17. Christians' motion to add Deppe, Patton, Mark, and Mason, Doc. 17, is denied for the following reasons. Under Federal Rule of Civil Procedure 15(a)(1), "[a] party may amend its pleading once as a matter of course no later than . . . 21 days after serving it, or . . . if the pleading is one to

which a responsive pleading is required, 21 days after service of a responsive pleading" or

motion. "In all other cases, a party may amend its pleading only with the opposing party's

written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Because Christians already

amended his complaint, he may only amend his amended complaint with the opposing party's

written consent or the Court's leave. Under this Court's local rules, "any party moving to amend

a pleading must attach a copy of the proposed amended pleading to its motion to amend with the

proposed changes highlighted or underlined so that they may be easily identified." D.S.D. Civ.

LR 15.1. Christians has already filed three prior motions to amend his complaint and one prior

motion to supplement his complaint, and Christians did not comply with this Court's local rules.

Thus, Christians' motion to add defendants, Doc. 17, is denied.

## MOTIONS FOR ASSISTANCE WITH SERVICE

Christians filed a motion for the United States Marshal Service to serve the defendants.

Doc. 4. He also filed a request for assistance of service for Hanvey and Swygert because they are

no longer employed at the SDSP, and he asks that the DOC provide the United States Marshal

Service with the last known addresses and phone numbers for Hanvey and Swygert. Doc. 6.

Christians also filed a motion for assistance with serving Swygert because he found a case in

which Swygert could not be served at the last known address that the DOC had for Swygert.

Doc. 7.

When a plaintiff is granted leave to proceed in forma pauperis, the court will assume the

obligation to "issue and serve all process[.]" 28 U.S.C. § 1915(d). *See also* Fed. R. Civ. P.

4(c)(3). When a plaintiff—pro se or otherwise—does not move to proceed in forma pauperis, the

Court does not bear the burden of ordering service of process, and the plaintiff remains

responsible for service *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3); *Yates v. Baldwin*, 633

F.3d 669, 672 (8th Cir. 2011) ("Because [the plaintiff] failed to qualify under § 1915, he was not entitled to have the clerk's office issue and serve all process."); *Clayton v U S Postal Serv*, 2023 WL 6538419, at *1 (E.D. Mo. Oct. 6, 2023) ("Because [plaintiff] lacks in forma pauperis status, []he is not entitled to service, without cost, by the U.S. Marshals Service."). Thus, Christians' motions for assistance with service, Doc. 4, is denied.

Christians requests that this Court order the DOC to provide the United States Marshal Service with the last known addresses and phone numbers for Hanvey and Swygert. Doc. 6. Christians also filed a second motion for courts assistance to locate Swygert because in a separate case Swygert was unable to be located at the last known address. Doc. 7 (citing *Scott v Carpenter*, 4:23-CV-04020-RAL, 2024 WL 278827 (D.S.D. Jan. 25, 2024)). Christians requests any relief that this Court is willing to provide to locate Swygert, potentially including ordering the Attorney General's Office to contact Swygert at his last known telephone number, email address, or emergency contact information; appoint counsel or private investigator to provide Christians with the address; or order the United States Marshal Service to locate. *Id* at 1–2. Because the State of South Dakota has not yet appeared on behalf of any defendants, Christians' motions for assistance with service, Docs. 6 and 7, are denied as premature. Christians may refile his motions for assistance with service after appearance by the State of South Dakota.

### NOTICE OF RULE 4(M) AND CASE MANAGEMENT

Federal Rule of Civil Procedure 4(m) states in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Christians is on notice of this Court's intention to dismiss his claims without prejudice if he does not serve each defendant by **ninety days from the date of this Court's screening order,** pursuant to Rule 4(m), unless he can show good cause for his failure to serve the respective defendant.

Christians has three very similar lawsuits, primarily differing in time frames, pending before this Court. *Christians v Hanvey,* 4:23-CV-04137-LLP; *Christians v Christensen,* 4:22-CV-04072-LLP; *Christians v Young,* 4:20-CV-04083-LLP. There are fifty-three defendants named in the present suit with claims against twenty-two defendants surviving screening. The first lawsuit named sixty-three defendants with claims against thirty-five defendants surviving, and the second lawsuit named twenty-five defendants with claims against ten defendants surviving. The Court may at some point for the purposes of case management consolidate the three cases so that what survives motion practice will be one trial.

## CONCLUSION

Accordingly, it is ORDERED:

1. That Christians' claims against Summit, Trierweiler, and Waldner in their individual and official capacities are barred by res judicata and dismissed with prejudice for failure to state a claim under 28 U.S.C. § 1915A(b)(1).

2. That Christians' claims against all defendants in their official capacities for money damages are dismissed without prejudice under 28 U.S.C. § 1915A(b)(2).

3. That Christians' First Amendment retaliation claim against Swygert in his individual capacity for money damages survives § 1915A screening. Christians' First Amendment retaliation claims against Bittinger, Schneider, Landon, Bertsch, Vanderaa, Benting, and Lindsay in their individual capacities for money damages survive § 1915A

screening. Christians' First Amendment retaliation claims against Bittinger, Schneider, Landon, Bertsch, and Benting in their official capacities for declaratory relief and Vanderaa and Lindsay in their official capacities for injunctive and declaratory relief survive § 1915A screening.

4. That Christians' First Amendment access to the courts claim against Schneider, Yost, Bertsch, and Hughes in their individual capacities for money damages and their official capacities for declaratory relief survives § 1915A screening.

5. That Christians' First Amendment right to send and receive mail claim against Schneider, Yost, Bertsch, and Hughes in their individual capacities for money damages and official capacities for declaratory relief survives § 1915A screening.

6. That Christians' Fourth Amendment unreasonable search claim against Swygert in his individual capacity for money damages and his official capacity for declaratory relief survives § 1915A screening.

7. That Christians' Christians' Eighth Amendment sexual assault claim against Swygert in his individual capacity for money damages and his official capacity for declaratory relief survives § 1915A screening.

8. That Christians' Eighth Amendment deliberate indifference to conditions of confinement claims against Swygert, Schneider, Maturan, Black, Revolorio, Pirraglia, and John and/or Jane Doe(s) in their individual capacities for money damages and their official capacities for declaratory relief survive § 1915A screening. Christians' Eighth Amendment deliberate indifference to conditions of confinement claims against Leidholt and Sullivan in only their individual capacities for money damages and against

Wasko and Bittinger in their official capacities for declaratory relief survive § 1915A screening.

9. That Christians' Eighth Amendment conditions of confinement claim against Aramark survives § 1915A screening.

10. That Christians' Eighth Amendment deliberate indifference to serious medical needs claims against Welbig, Swygert, Hanvey, Schneider, Sullivan, Maturan, Bittinger, Dr. Richter, Black, Revolorio, Miller, Jackson, Pirraglia, Landon, Vanderaa, and Benting in their individual capacities for money damages survive § 1915A screening.

11. That Christians' Rehabilitation Act claims against Maturan, Walter, Bittinger, and Wasko in their individual capacities are dismissed with prejudice under 28 U.S.C. § 1915A(b)(1).

12. That Christians' remaining claims are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

13. That this Court declines to exercise supplemental jurisdiction over Christians' state-law claims under 28 U.S.C. § 1367(c), and Christians' state-law claims are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

14. That Christians' request to receive an updated docket sheet, Doc. 13-1, is granted. The Clerk of Court shall send Christians a current copy of the docket sheet.

15. That Christians' motion to add defendants, Doc. 17, is denied.

16. That the Clerk of Court shall send 22 blank summons forms to Christians so that he may arrange for his own service of process of the remaining defendants.

17. That Christians' motions for assistance with service, Doc. 4, is denied.

18. That Christians' motions for assistance with service, Docs. 6 and 7, are denied as premature.

19. That Christians is on notice of this Court's intention to dismiss his claims without prejudice if he does not serve each defendant by **ninety days from this Court's screening order**, pursuant to Rule 4(m), unless he can show good cause for his failure to serve the respective defendant.

20. That Christians will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Local Rules while this case is pending.

DATED this 18ᵗʰ day of September, 2024.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK